**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

UNITED STATES OF AMERICA

versus                                            CRIMINAL NO. 23-12-SDD-SDJ

FRANK BEAUCHAMP, JR.

**RULING**

This matter is before the Court on the Motion to Dismiss the Indictment[1] filed by Defendant, Frank Beauchamp, Jr. ("Defendant"). The United States ("the Government") filed an Opposition[2] to Defendant's motion. For the reasons below, Defendant's Motion will be denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

The Defendant has been charged by indictment with possession with intent to distribute fentanyl, methamphetamine, and alprazolam (Count One); possession of a firearm by a convicted felon (Counts Two and Five); possession with intent to distribute fentanyl (Count Three); possession of a firearm in furtherance of a drug trafficking crime (Count Four); and distribution of fentanyl (Count Six).[3]  He has several prior convictions, including state felony convictions for attempted distribution of cocaine, possession with intent to distribute a Schedule I controlled dangerous substance, and distribution of cocaine.[4]

---

[1] Rec. Doc. 39.
[2] Rec. Doc. 40.
[3] Rec. Doc. 23.
[4] Rec. Doc. 13, p. 6-7.

Defendant filed the instant motion to dismiss Counts Two, Four, and Five of the Indictment on the grounds that the charged statutes, 18 U.S.C. §§ 922(g)(1) & 924(c)(1)(A), are unconstitutional under the Second Amendment. Defendant primarily relies upon the United States Supreme Court's decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,[5] and *United States v. Rahimi*.[6] The Government opposes the Motion, arguing that Defendant is the type of "dangerous" person the Second Amendment excludes, and applying § 922(g)(1) to Defendant is consistent with this Nation's historical tradition of firearm regulation.

## II.    MOTION TO DISMISS

Federal Rule of Criminal Procedure 12(b)(1) provides that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."[7] Specifically, "a party may move to dismiss an indictment based on a defect in the indictment, including failure to state an offense."[8] Courts may resolve any defects before trial when the motion presents a question of law.[9] The primary question here - whether § 922(g)(1) is unconstitutional as applied to Defendant – does just that.

## III.    THE SECOND AMENDMENT

The Supreme Court first recognized an individual right under the Second Amendment to keep and bear arms for self-defense in *District of Columbia v. Heller*.[10] On this ground, the High Court held unconstitutional the District of Columbia's "ban on handgun possession in the home" and "its prohibition against rendering any lawful firearm

---

[5] 597 U.S. 1 (2022).
[6] 602 U.S. 680 (2024).
[7] Fed. R. Crim. P. (12)(b)(1).
[8] *United States v. Wilson*, No. CR 22-238, 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)) (cleaned up).
[9] *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).
[10] 554 U.S. 570 (2008).

in the home operable for the purpose of immediate self-defense."[11] However, the Court emphasized that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[12] Accordingly, under *Heller*, these prohibitions are "presumptively lawful regulatory measures."[13]

In *Bruen*, the United States Supreme Court advanced a two-step framework for Second Amendment constitutional challenges.[14]  Specifically, the Court held:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."[15]

"This historical inquiry that courts must conduct will often involve reasoning by analogy ...."[16] And "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'"[17] This involves finding "a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."[18]

In *United States v. Rahimi*, the Supreme Court further clarified the "historical analogue" requirement.[19] "These precedents were not meant to suggest a law trapped in amber."[20] "[T]he appropriate analysis involves considering whether the challenged

---

[11] *Id.* at 635.
[12] *Id.* at 626.
[13] *Id.* at 627 n.26.
[14] 597 U.S. at 24
[15] *Id.* (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)).
[16] *Id.* at 28.
[17] *Id.* at 28–29 (citing C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)).
[18] *Id.* at 30.
[19] 602 U.S. 680, 691 (2024).
[20] *Id.*

regulation is consistent with the principles that underpin our regulatory tradition."[21] The Court found that 18 U.S.C. 922(g)(8) was constitutional on its face and as applied to *Rahimi* because the United States' "firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms."[22]

In *Diaz*, the Fifth Circuit applied this framework to § 922(g)(1).[23] The *Diaz* court considered the defendant's felon status in the second step of the *Bruen* analysis, collapsing the inquiry "into one question: whether the law is consistent with our Nation's history of firearm regulation."[24] The Fifth Circuit held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1) ...."[25] Accordingly, the Government bears the burden to demonstrate that the application of § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."[26]

In determining whether a historical law is relevantly similar, the Fifth Circuit instructs district courts to focus "on the why and how [and] ascertain whether the challenged regulation 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation."[27] In *Diaz*, the Fifth Circuit held that § 922(g)(1)'s justification (the "why") was "relevantly similar" to the examples of punishing felonies with death: "to deter violence and lawlessness."[28] The court also reasoned that the method by which § 922(g)(1) reaches this goal (the "how")—permanent disarmament—was consistent with historical methods because, if felonies were

---

[21] *Id*. at 692.
[22] *Id*. at 690.
[23] 116 F.4th 458.
[24] *Id*. at 467 (citing *Rahimi*, 602 U.S. at 692).
[25] *Id*.
[26] *Id*. (quoting *Bruen*, 597 U.S. at 24) (internal quotation marks omitted).
[27] *United States v. Quiroz*, 125 F.4th 713, 718 (5th Cir. 2025) (quoting *Bruen*, 597 U.S. at 29).
[28] *Diaz*, 116 F.4th at 469.

historically punished with death, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible."[29]

Notably, the *Diaz* decision was not a blanket holding that all felonies may serve as a constitutional predicate offense to § 922(g)(1); rather, it is applicable to only those that "fit[ ] within this tradition of serious and permanent punishment[,]" such as death or permanent estate forfeiture.[30]  The *Diaz* court specifically addressed a predicate conviction of theft, finding that there was a significant history and tradition of severe punishment for theft by looking to the historic laws of three states: Massachusetts, New York, and Virginia.[31] Further, the Fifth Circuit found that the historical "going armed" and forfeiture of weapons laws "punished 'those who had menaced others with firearms' ... [and] provide[d] for permanent arms forfeiture as a penalty."[32] "Imposing permanent disarmament as a punishment is also within our Nation's history and tradition."[33] The Fifth Circuit held that, "taken together, laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz."[34]

Similarly, in *United States v. Bullock*, the Fifth Circuit rejected a § 922(g)(1) challenge by a defendant with prior convictions of aggravated assault and manslaughter.[35] "From the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others."[36]

---

[29] *Id.*
[30] *Id.* at 470.
[31] *Id.* at 468.
[32] *Id.* at 470–71 (citing *Rahimi*, 602 U.S. at 697; Acts and Resolves, Public and Private, of the Province of the Massachusetts Bay 53).
[33] *Id.* at 471.
[34] *Id.*
[35] 123 F.4th 183, 184–85 (5th Cir. 2024).
[36] *Id.* at 185 (quoting *Rahimi*, 602 U.S. at 693).

"The historical record demonstrates 'that legislatures have the power to prohibit dangerous people from possessing guns.'"[37] The Fifth Circuit reasoned that "[t]here can be no doubt that manslaughter and aggravated assault in this context constitute dangerous and violent crimes."[38] The court looked to the "historical tradition of severely punishing individuals convicted of homicide, a prototypical common law felony considered a 'very dangerous offense[, ]'"[39] and to the fact that the defendant's conduct was "'relevantly similar' to, and arguably more dangerous than, the 'prototypical affray [which] involved fighting in public,' the precursor to the 'going armed' laws punishable by arms forfeiture."[40]

More recently, in *Quiroz*, the Fifth Circuit addressed 18 U.S.C. § 922(n), possession of a firearm while under indictment for a felony.[41] There, the defendant was under indictment for burglary and bail jumping.[42] The Fifth Circuit analyzed the history of burglary as a capital offense, finding a tradition because seven states at the founding deemed burglary a capital offense.[43] The court also found that unanimity between the states was not necessary to show history and tradition.[44]

At present, neither the Supreme Court nor the Fifth Circuit has set a minimum number of historic laws required to establish a history and tradition of serious and permanent punishment, and in *Diaz*, the Fifth Circuit was satisfied with a history and

---

[37] *Id.* (quoting *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting)); *see also Folajtar v. Attorney Gen.*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("The historical touchstone is danger[.]")).

[38] *Id.* (citation omitted).

[39] *Id.* (citation omitted).

[40] *Id.* (quoting *Rahimi*, 602 U.S. at 697).

[41] 125 F.4th at 715.

[42] *Id.*

[43] *Id.* at 724.

[44] *Id.* at 725.

tradition looking at the laws of only three states.[45] In *Quiroz*, the court was satisfied with the history and tradition of seven states.[46] From these cases, the Court cannot ascertain a brightline rule for determining how many states' laws are necessary to establish a tradition, but the Court finds guidance from *Diaz* and *Quiroz*.

## IV.    THE SECOND AMENDMENT AND DRUG TRAFFICKING

As noted recently by another Section of this Court, "[t]he Fifth Circuit has not yet determined whether drug trafficking crimes can serve as a constitutional predicate offense to § 922(g)(1). However, the overwhelming majority of district courts in this circuit have found that they can."[47]

In *United States v. Wilson*, the district court for the Eastern District of Louisiana addressed a challenge where the defendant's "criminal history includes possessing a firearm by a felon, possessing heroin, illegally possessing stolen firearms, and possessing heroin with the intent to distribute it."[48] The district court properly required the Government to demonstrate "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this."[49] The court looked at several founding-era laws and concluded that the Government had demonstrated the requisite tradition:

> The government has carried its burden under *Bruen* to show "that the Nation has a longstanding tradition of disarming someone with a criminal history" analogous to Wilson's. *Id*. To carry that burden, the government relies principally on Founding-era laws criminalizing possessing and trafficking contraband. [ECF No. 89 at 6–11.] And the government has shown that one or more of Wilson's predicate convictions are sufficiently analogous to the cited Founding-era laws imposing severe punishments for possessing or

---

[45] 116 F.4th at 468.

[46] 125 F.4th at 724.

[47] *United States v. Davis*, No.  2025 WL 964439, at *4 (M.D. La. Mar. 31, 2025).

[48] No. 22-238, 2024 WL 4436637, at *4 (E.D. La. Oct. 6, 2024).

[49] *Id*. (quoting *Diaz*, 116 F.4th at 467).

trafficking contraband. Among other "relevantly similar" examples, *Diaz*, 2024 WL 4223684, at *7, the government explains that Virginia authorized imposition of the death penalty for the crime of knowing receipt of a stolen horse, that the Second Congress authorized imposition of the death penalty for the crime of theft of the mail, and that States and the federal government authorized imposition of the death penalty for the counterfeiting and forgery of public securities. [ECF No. 89 at 7 (citing, *inter alia*, 6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, 130 (1819); An Act to Establish the Post-Office and Post Roads within the United States, § 17 1 Stat. 232, 237 (1792); An Act for the Punishment of Certain Crimes Against the United States, §§ 115, 1 Stat. 112, 115 (1790); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) 260-61 (1886); 9 William Waller Hening, Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature 302 (1821)).] If capital punishment was permissible to respond to possessing and/or trafficking contraband, "then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." [*Diaz*, 2024 WL 4223684, at *7.] Accordingly, the Founding-era laws cited by the government qualify as "relevantly similar" evidence that "establish[es] that our country has a historical tradition of severely punishing people like [*Wilson*] who have been convicted" of possessing and trafficking contraband. *Id*. at *6, 7.[50]

The Eastern District also cited "the Nation's longstanding tradition of disarming those convicted of serious crimes indicating that they may pose a risk of violence or other danger to public safety."[51] The district court continued:

Here, Wilson's predicate felony drug-and-gun convictions reveal that Wilson may pose a comparable risk of violence or other danger to public safety. Congress has long recognized "that drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993) (citing statistics on the percentage of murders relating to the drug trade). And federal appellate courts have acknowledged that "drug dealing is notoriously linked to violence." *United States v. Torres–Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (citations omitted); *see also, e.g.*, *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011) ("[O]ffenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) ("[T]he illegal drug industry is, to put it mildly, a dangerous, violent business."). Accordingly, permanently disarming those, like Wilson, who have committed serious drug-and-gun felonies associated with violence is "consistent with

---

[50] *Id*.
[51] *Id*. at *5.

the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.[52]

The *Wilson* court also cited several cases from around the nation supporting its

position:

> Finally, for good measure, courts across the country have held Section 922(g)(1) constitutional as applied to defendants with predicate convictions resembling one or more of Wilson's predicate convictions. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1125–29 (8th Cir. 2024) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug offenses); *United States v. Canales*, 702 F. Supp. 3d 322, 327–32 (E.D. Pa. 2023) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate drug convictions); *United States v. Goins*, 647 F. Supp. 3d 538, 554–55 (E.D. Ky. 2022) (holding Section 922(g)(1) constitutional as applied to a defendant with predicate convictions for DUI and drug possession); *United States v. Pearson*, No. 22-CR-271, 2023 WL 6216527, at *3 (E.D. Pa. Sept. 25, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug-distribution and firearm convictions); *United States v. Blackshear*, No. 23-CR-159, 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023) (same); *United States v. Reichenbach*, No. 4:22-CR-57, 2023 WL 5916467, at *8–10 (M.D. Pa. Sept. 11, 2023) (holding Section 922(g)(1) constitutional as applied to defendant with predicate drug convictions); *United States v. Wise*, No. 21-CR-511, 2023 WL 6260038, at *4–7 (W.D. Pa. Sept. 26, 2023) (finding Section 922(g)(1) constitutional as applied to defendant with one predicate drug-trafficking conviction). Many of those courts reason, as the Court has here, that "guns and drugs" are "a dangerous combination increasing the risk of violence addressed by Congress in dispossessing significant long-time drug dealers of firearms." *Pearson*, 2023 WL 6216527, at *3 (internal citation and quotation marks omitted); *see also, e.g., Reichenbach*, 2023 WL 5916467, at *9 ("There are few crimes that pose a greater risk to the public than drug trafficking, and fewer still where the dangerous connection between the crime and possession of firearms is more present or better understood."); *Canales*, 702 F. Supp. 3d at 321 ("[D]isarming individuals ... who have shown a proclivity toward drug trafficking[ ] serves the same purpose of protecting the public from unnecessary violence.").[53]

On these grounds, the defendant's motion to dismiss was denied.[54]

---

[52] *Id.*

[53] *Id.*

[54] *Id.* at *6.

This pattern has continued in district courts within this circuit. In *United States v. Carter*, the defendant's prior convictions included "possession with intent to distribute 28 grams or less of cocaine, possession of tramadol, and possession of a firearm by a convicted felon."[55] Chief Judge Brown considered the same three historical laws as in *Wilson* and concluded that "the founding-era laws cited by the government are 'relevantly similar' evidence 'establish[ing] that our country has a historical tradition of severely punishing people like [Carter] who have been convicted' of possessing and trafficking contraband."[56] The *Carter* court also found the same "risk of violence or other danger to public safety:"

> Carter submits that his prior convictions for drug trafficking are different than the violent offenses considered by the Supreme Court in *Rahimi*. However, in *Diaz*, the Fifth Circuit held that Section 922(g)(1) is constitutional as applied to an individual previously convicted of theft, which the court recognized did "not inherently involve a threat of violence." [116 F.4th at 471 n.5.] Additionally, application of the felon-in-possession statute to drug criminals aims to address a risk of violence. Congress has long recognized "that drugs and guns are a dangerous combination." [*Smith v. United States*, 508 U.S. 223, 240 (1993) ("In 1989, 56 percent of all murders in New York City were drug related; during the same period, the figure for the Nation's Capital was as high as 80 percent.").] "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." [*United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024).] "This history demonstrates that there is no requirement for an individualized determination of dangerousness as to each person in a class of prohibited persons." [*Id.*] Therefore, the government has met its burden of showing that applying Section 922(g)(1) to Carter "is consistent with this Nation's historical tradition of firearm regulation." [*Diaz*, 116 F.4th at 467 (quoting *Bruen*, 597 U.S. at 17).][57]

---

[55] No. CR 23-22, 2024 WL 4723236, at *6 (E.D. La. Nov. 8, 2024).
[56] *Id*. (quoting *Diaz*, 116 F.4th at 468–69).
[57] *Id*. at *7.

Ultimately, the court concluded that "this holding is consistent with rulings from courts across the country who have addressed the constitutionality of Section 922(g)(1) as applied to defendants with predicate drug possession and trafficking convictions."[58]

Additionally, numerous district courts have applied the reasoning set forth in *Wilson* and *Carter* regarding drug trafficking to cases involving simple possession of drugs.[59]

Considering the Defendant's predicate state felony convictions for attempted distribution of cocaine, possession with intent to distribute a Schedule I controlled dangerous substance, and distribution of cocaine, the Court finds that his as-applied challenge to Sections 922(g)(1) and 924(c)(1)(A) are foreclosed by the reasoning and analyses in the mountain of caselaw discussed above.

---

[58] *Id*. at *7 & n.113 (collecting cases, including *Wilson* and those cited therein).

[59] *See United States v. Staeger*, No. 24-108, 2025 WL 605053, at *2 (S.D. Miss. Feb. 25, 2025) ("Other courts, including some within this Circuit, have adopted this analogy and upheld § 922(g)(1) as applied to felons convicted of drug possession.... The Court sees no meaningful distinction between those cases and this one, but even if it did, Defendant was also convicted of forgery, which was punishable by estate forfeiture or death at the time of the Founding." (citing, i*nter alia*, *United States v. Mack*, No. 24-244, 2025 WL 221808, at *3 (W.D. La. Jan. 16, 2025); *United States v. Patino*, No. 24-60, 2024 WL 5010146, at *5–7 (W.D. Tex. Nov. 26, 2024); *United States v. Landrum*, No. 24-63, 2024 WL 4806486, at *1 (S.D. Miss. Nov. 15, 2024); *Wilson*, 2024 WL 4436637, at *4–5; *United States v. Sampson*, No. 24-266, 2024 WL 4418299, at *4 (D. Ariz. Oct. 4, 2024))); *see also United States v. Flowers*, No. 25-10, 2025 WL 726572, at *4 (W.D. La. Mar. 6, 2025) (denying as-applied challenge to § 922(g)(1) where predicate felonies included possession of controlled dangerous substances and battery of a police officer (citing *Wilson*, 2024 WL 4436637, at *4–5; Carter, 2024 WL 4723236, at *6); *United States v. Garner*, No. 24-112, 2024 WL 4820794, at *3 (W.D. La. Nov. 18, 2024) (denying as-applied challenge where one prior conviction was possession of marijuana (citing Wilson and Carter)). *But see United States v. Luna*, No. 23-518, 2025 WL 760044, at *3, 6 (S.D. Tex. Feb. 10, 2025) (disagreeing with *Patino*, distinguishing cases involving "drug trafficking offenses," and "find[ing] that the Government ha[d] not met its burden of establishing a history and tradition of disarming someone with a criminal history of possession of a controlled substance").

## V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment[60] is DENIED.  The Clerk of Court is ordered to lift the stay in this matter.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 23rd day of April, 2025.


_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[60] Rec. Doc. 39.